sario. I want to focus on the factual predicate underlying the gist of Mr. Rosario's appeal and that of whether there's a factual basis for his plea to the 924C charge. And the purpose of this statute, of course, is to ensure that the defendant knew what he was pleading guilty to was, in fact, a crime. And the standard this Court uses is to determine whether what the defendant is admitting — and I should go back and refer to the district court's purpose — is to look at whether what the defendant is admitting, there is a factual predicate to support the charge. And here, Mr. Rosario articulated in conclusory terms that his conduct with respect to his drug activity was — his possession of the gun was in furtherance. He acknowledged that, certainly. And then — but then we get to, okay, what conduct do we have in this record to show that he did possess that gun in furtherance? What advantage did he have with that weapon? Well, he transported drugs in his vehicle, and the gun was found there, correct? Judge, I do not think the record lends itself to the reasonable inference that the ban was used to transport drugs. And what we have in this record is one narcotics transaction which occurred about a month before he was arrested, when the gun was recovered, and his — the van was parked in the vicinity of the residence where this particular drug transaction took place. And as a result of that, the agents obtained a GPS tracking warrant. And that's all we know about the van on that particular day. I do want to note that my client lived down the street from where the narcotics transaction took place. The narcotics transaction took place at 306 Kellogg Street. My client's residence at the time was 513 Kellogg Street. And it's on the other end of the block. But that's all we know about the van. And the key inference that the court drew from the facts that my client admitted that the gun was his, he used it for his possession, and that he had this gun for 90 days. And from that, the court extrapolated that when he engaged in that particular drug deal, he possessed the gun in the van. The gun was in the van. He constructively possessed it. What is it that your client is saying that he didn't understand? What precisely are you referring to? Is it the meaning of the words? And are there certain words? Or is it something broader than that? He confused the concept of possession with the concept of in furtherance of. And there is a consistency. I don't actually understand that. Well, to be guilty of 924C, the possession of the gun has to be more. My question is, did your client not understand the meaning of the words in possession or furtherance? In furtherance of. That's his position. In furtherance of. In furtherance of. The meaning of the words or the legal impact and import of the words? I would say both, because originally he was charged with possessing the weapon as a felon, which is a mere possession standard. In furtherance, of course, requires more. And he submitted that he did not understand what in furtherance meant at the time he pled guilty. He says. Oh, I'm sorry. Well, just one follow-up question on that. Elsewhere in the agreement, he says, you know, there's in furtherance of the conspiracy. Same words. In furtherance of. But he understood it there? He never challenged his guilty plea under that count. It was only the 924C count that he challenged that particular term. We didn't address that in our papers. He alleged that his attorney did not explain to him what this element meant. And as it relates to his motion to withdraw his plea, we're submitting that an evidentiary hearing would be needed because his attorney denies it. There's a question of fact there. But this Court has an independent basis to vacate his plea because of the lack of the factual predicate under 11B3. And that does not require hearing. Let me understand something. You say on page 27, as I understand it, that your client didn't become aware of the meaning of in furtherance of until after he was interviewed by probation on August 10, 2017. But as I understand it, in his October 11, 2017 letter, he says that he informed the including Mr. Moynihan, who he had fired in July of 2017. There seems to be an inconsistency. My client is mistaken on that point because I looked at the letter he wrote to the Court a week after he pled guilty, complaining about Mr. Moynihan. And the genesis of his complaint was Mr. Moynihan's answer to the Court's question, had you been Although formal discovery never took place because Mr. Rosario was never indicted. He's mistaken about that. So when did he become aware? He said, he says in his affidavit after his PSR interview, which was August 10th. And when you look at his statement to the probation officer, it echoes what he told police at the time they recovered this firearm, which is, I had the gun not for my drugs, but for my self-protection. Now that doesn't exculpate him, certainly, but it does factor into his understanding of what furtherance means as opposed to possession. He's essentially denying that his possession of the weapon was in furtherance of his drug activity. And he's saying this after he pled guilty to in furtherance of. So I'm clear about this. Are you saying also that the district court was mistaking in denying the motion to withdraw the guilty plea because of legal innocence? We asked for a hearing on his motion to withdraw his plea, and it was based more on ineffective assistance of counsel than the legal innocence prong. Of course, that is one of the factors a court considers. And I'm asking this court to take into consideration whether or not the legal innocence prong whether my client has asserted a claim of legal innocence, because he is asserting that claim. And I don't think there's a delay, because he did make his intention known fairly soon after he pled guilty. And that would... Is there any evidence that you can point to of that innocence, apart from the absence of record evidence supporting the in furtherance of conspiracy element? You're asking, Your Honor, is there any evidence other than my client's statement? Yes. I'm relying on the absence of evidence. What's noteworthy about this case is that there's no weapon that's readily accessible as it relates to the drugs or the drug proceeds. And we cite two cases, Frained and Luder. And those two cases are significant here, because in both those instances, the defendant said, similar to what my client said, is that I had the gun for my protection. But in those two cases, in one of the cases, the weapon was on the defendant's possession, personal possession at the time of the drug activity. And in the other case, the weapon was readily accessible to not only the defendant, but it was with where the drugs were stored. And so you have that nexus, and that's what this boils down to. The nexus in this case is the extrapolation that on the one single concrete date of drug activity by my client, the judge sought to be found that the gun was in the van 30 days before the gun was found in the van. I submit that's not a reasonable inference. I think it strains credulity. I think it's speculation. This Court will decide that issue. I think that makes this case unique, because you just do not have that connection between the weapon and the drug activity, other than my client's admission. Did he understand what inference meant? And that's why it's important. Thank you. Thank you. May it please the Court. My name is Paul Soler. I appear on behalf of the government. Other than the defendant's belated contention that he did not understand the meaning of the words, inference of, everything in the record indicates that he did. Obviously, that language was included in the information to which he entered his guilty plea. The plea agreement set forth the language of inference of. And in doing so, in sending forth the elements of the 924C charge, the plea agreement set forth that the defendant committed a drug trafficking offense for which he could be prosecuted in a court of the United States, and directly below that possessed the gun in furtherance of the drug trafficking offense. So. Doesn't the law, how would you respond to this, that the law requires that the district court has to compare the law to the particular conduct that the defendant admits to having committed? Well, I think what's. Would you agree that that's correct? Yes. That sounds to me like a correct statement of the lawyer, Your Honor. And so how did that happen here? Well, the defendant's van was surveilled outside of the residence where the defendant was making a delivery of a half a kilogram of cocaine in April. And the gun obviously was found in the van. The gun was loaded. These are other. We discussed this with the officer. What was the connection between the drugs and the van in this case? Was the presence at the individual purchaser from this defendant? Not that the drugs were found there. They weren't found in the van. They were not, Your Honor. Was there an inference that they had been transported in the van? That was the inference that the government and the court below drew. Mm-hmm. What's the evidence that Rosario used the van or carried the gun in connection with the transaction? We know that the van was parked near the home. But beyond that, where is the specific nexus? That is the specific nexus. In addition to that, to the extent the court was obliged to determine that there was a factual basis for the plea, there was the criminal complaint before the court which, in contradiction to Mr. Rosario's contention that he only delivered drugs on one occasion, set forth a basis to believe that he was engaged in the distribution of cocaine on numerous occasions. And it was undisputed that during the time period that these distributions and furtherance of the conspiracy occurred, he used the van where the gun was found. So that the gun was found in the girlfriend's van. We know that. But not at the scene of any drug activity. Well, um. And the van was parked near the transaction on April 4th. That's all correct. We know that. But the nexus is what we're trying to establish. Well, I mean, the only thing that I can point to specifically is the proximity of the van to the purchaser's residence and the inference, which seems to be permissible, that the drugs were transported in the van. But if the district court is entitled to conclude, contrary to Mr. Rosario's contention, that this conspiracy involved more than one sale of cocaine, we don't have to put the gun next to the drugs specifically to demonstrate that he carried or possessed the gun in furtherance of the drug conspiracy. Because the danger from engaging in that conduct doesn't only exist in the context of a specific transaction. Isn't the problem here that furtherance, the furtherance question was not fully explored at the plea allocation, allocution, because it was never contested. It was in all the documents. It was in the plea agreement. And the conclusion that it was in furtherance of was accepted, and there wasn't an inkling that he didn't understand what the word in furtherance of meant at that time. But when you say, isn't that the problem, I don't think that's the government's problem. I think that's the defendant's problem.  And to the extent there is a problem, I think that's the problem. It seems to me that that's the issue. I mean, the government would have presumably fleshed that out if there had been any doubt about his understanding of the word in furtherance at the plea. Well, when the government detailed the proof against the defendant, Mr. Rosario, at the time of the plea, Mr. Rosario was asked by the district court, is that what you did? And he said, yes. Mr. Rosario was asked by the district court, do you understand, you know, the elements of the crime, and the nature of the charge, I think, is the way it was. He had no questions about that. Counsel at the time of the plea said, or confirmed to the district court, that he had advised the defendant of the nature of the charge. So everything that occurs, and I would also point to something Judge Park brought out, which is right below in the plea agreement where the language in furtherance of is used with respect to the gun charge, it's used not as an element of, but as factual support for the drug charge. And there's no question ever raised by the defendant that he didn't understand that language. Even if, let's say, the defendant understood or had some sense of those words in furtherance of, doesn't the district court still have an obligation to see whether the conduct falls within the contours of what the law prescribes? Yes. But he doesn't have to find proof beyond reasonable doubt. He's got to determine that there is a sufficient factual basis in the record for the court to conclude that this crime occurred. And that's here. And the court is entitled to draw reasonable inferences, particularly when they're not refuted by the defendant. Finally, with respect to the defendant's understanding. And what types of circumstances do district courts allow the withdrawal of a guilty plea? What does it require? Well, the three factors that I think are named are, or listed, are delay. In this case. How do we weigh that here? The delay, there was, it seems like there was some procedural delay and some, I think there's a dispute as to how much of it was due to the confusion about procedure and how much of it was the defendant's own delay. Well, this Court has said the delay should be measured from the time of the entry of the plea to the time of the making of the motion. Here that's about six months. The first time in the record that Mr. Rosario alerts the district court to the fact that he doesn't think he's guilty of this offense is in October, some four months after, about four months after the entry of the guilty plea. So even without looking at the time that the motion to withdraw is made, the delay in alerting the court and not asking for his plea to be withdrawn, but even if you just look at when he alerted the court, several months have gone by. That weighs against Mr. Rosario. Whether there's a claim of factual innocence, and there is a claim of factual innocence here, and whether there's prejudice to the government, and the government has not claimed to be prejudiced, that it would be prejudiced if there's a withdrawal of this plea. What the Court then describes, not listed as a separate factor, is what type of allocution has occurred, and has specifically said bald allegations that refute the defendant's statements under oath are generally insufficient to permit the withdrawal of the guilty plea. And here, everything in the record leading up to Mr. Rosario's indication to the court, you know, I didn't understand this language, indicates that he did. And if there was doubt about that, we have the affidavit of counsel, defense counsel below, at the time of the plea, which is consistent with what defense counsel said to the court, and which is consistent with what Mr. Rosario said to the court, that he advised the defendant of the nature of this charge. So beyond the defendant's assertion, there is nothing in the record to indicate that he doesn't understand that language. And his claim, if I may just make one point, that he is not proficient in the English language, having been born in Puerto Rico, I think is belied by looking at the letters that he wrote to the district court, which are quite articulate, unless the court has further questions. Roberts. Any further questions? Thank you, Your Honors. I'd like to address two things that were raised during counsel's argument. Judge Park, with respect to your question about delay, the record was supplemented with letters that my client wrote to the court shortly after he pled guilty. And I would just like to give a brief timeline of what my client did, because I submit he exercised due diligence in trying to withdraw his plea. And he pled guilty, I think, on June 19th. And on June 26th, he wrote the court complaining about his attorney's answer to that discovery question. And in the letter to the court, he says, I respectfully ask the court to allow me to withdraw my plea and afford me a bail hearing. That was not in the original record that was supplemented after I filed my brief. He didn't raise the in furtherance claim at that point in time, but he did articulate his desire to withdraw his plea. So after that, about a week later. Without giving a reason? Pardon? Without giving a reason at that point? Well, he was complaining about his attorney for saying that he had received discovery when he had not received it. And shortly after that, he fired his attorney. He was retained. And Mr. Rosario wrote another letter to the court saying, please assign me counsel. And it did, the federal defender. Fast forward to August 10th. Mr. Rosario has his interview with the probation officer. He makes the statement distinguishing between his motivation for the firearm. And on October 11th, which was the original sentencing date, he appears in court with counsel. I'm sorry, he wrote another letter to the court raising the in furtherance claim that we're here on today. And then on October 25th, which was the original sentencing date, he appears with his counsel. And Judge Sotheby advises Mr. Rosario that he's going to adjourn sentencing and he should think carefully about whether to proceeding with this motion to withdraw. And then it wasn't until about six weeks after that, on December 15th, when his lawyer filed the motion. That's six months, certainly. But scratch the surface, and you have a defendant trying. And I think the record exhibits that. Second thing, even if Mr. Rosario had not filed a motion to withdraw his plea, I could still be standing here arguing the 11B3 point. That is an independent claim from his motion to withdraw. And what this case boils down to, if you accept that he knew the concept of in furtherance and that his plea was voluntary, does this record show that factual predicate? And I submit it doesn't. Thank you. Thank you both for your arguments. The court will reserve decision. The final case on the calendar, United States versus Seals, is on submission. The clerk will adjourn court. Court stands adjourned.